IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

HENRY L. STEPLER,

              **Plaintiff,**

     vs.                                 Civil Action 2:12-cv-1209
                                          Judge Sargus
                                        Magistrate Judge King

WARDEN, HOCKING CORRECTIONAL
FACILITY, *et al.*,

              **Defendants.**

ORDER AND
REPORT AND RECOMMENDATION

     This matter is before the Court on *Plaintiff [sic] Motion for
Summary Judgment*, Doc. No. 65 ("*Plaintiff's Motion*"), and *Defendants
Lucas Curry, Victor Marshall, and Tracy Grimm's Motion for Summary
Judgment*, Doc. No. 75 ("*Defendants' Motion*"). For the reasons that
follow, it is recommended that *Plaintiff [sic] Motion for Summary
Judgment*, Doc. No. 65, be **DENIED** and that *Defendants Lucas Curry,
Victor Marshall, and Tracy Grimm's Motion for Summary Judgment*, Doc.
No. 75, be **GRANTED**.  Plaintiff's request for the appointment of
counsel, Doc. No. 84, p. 3, is **DENIED**.

I.    **BACKGROUND**

     At all times relevant to this action, plaintiff was incarcerated
at the Hocking Correctional Facility ("HCF").[1] *See, e.g., Affidavit of
Henry Stepler*, attached to *Plaintiff's Motion*, PAGEID#:510 –

---

[1] Plaintiff was released from custody in January or February 2014.  Doc. Nos.
72 and 73.

PAGEID#:511 ("*Plaintiff's 9/10/12 Affidavit*").[2]  As an adherent of the

Jewish faith, plaintiff participated in the kosher meal program at

HCF.  *See, e.g., Affidavit of Victor Marhsall* [sic], ¶¶ 5, 13, 16

("*Marshall Affidavit*"), attached to *Defendants' Motion.*[3]  On January 2,

2013, plaintiff filed this civil rights action naming as defendants

Tracy Grimm (HCF's former food service manager), Lucas Curry (former

HCF kitchen staff member), Victor Marshall (chaplain at HCF), Samuel

Tambi (HCF's warden) and Carole Upchurch (HCF's deputy warden),[4]

claiming a denial of his rights in connection with the alleged denial

of kosher meals and the opportunity to observe his Jewish faith.

*Complaint.*  Plaintiff sues defendants in their individual and official

capacities, seeking monetary damages and prospective injunctive

relief.  *Id.* at PAGEID#: 99, 102.

On August 16, 2013, the Court granted in part and denied in part

the motion to dismiss filed on behalf of defendants Curry, Marshall

and Grimm ("the moving defendants").  *Opinion and Order*, Doc. No. 52.

In particular, the Court denied the motion to dismiss as to

---

[2] As with several other affidavits and additional submissions, *Plaintiff's 9/10/12 Affidavit* is offered three times in support of plaintiff's request for summary judgment and in opposing *Defendants' Motion.*  *See* Doc. No. 65, PAGEID#:510 – PAGEID#:511; Doc. No. 77-1, PAGEID#:701 - PAGEID#:702; Doc. No. 86, PAGEID#:793 - PAGEID#:794.

[3] The moving defendants also offer the *Marshall Affidavit* and several other affidavits in opposing *Plaintiff's Motion.*  *See Defendants Lucas Curry, Victor Marshall, and Tracy Grimm's Response to Plaintiff's Motion for Summary Judgment (Doc. 65)*, Doc. No. 74 ("*Moving Defendants' Memo. Contra*").

[4] Although plaintiff named "Victor Marshull" and "Tracy Grims" as defendants, *see, e.g., Complaint*, Doc. No. 4, PAGEID#: 97, their proper names are Victor Marshall and Tracy Grimm.  *Marshall Affidavit; Affidavit of Tracy Grimm*, attached to *Defendants' Motion* ("*Grimm Affidavit*").  The Court previously dismissed plaintiff's claims against defendant Alice Bartlett, institutional inspector.  *See Order*, Doc. No. 18.  The Court will address defendants Tambi and Upchurch by separate order.

plaintiff's claims under the Free Exercise Clause of the First Amendment of the United States Constitution and under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1, *et seq.* ("RLUIPA"), against defendants Marshall and Grimm and as to plaintiff's claims under the Equal Protection Clause of the Fourteenth Amendment against defendants Curry and Marshall. *Id*. The Court also denied the motion to dismiss as to plaintiff's claims for monetary damages based on alleged Frist Amendment violations. *Id*. Plaintiff and the moving defendants seek summary judgment on these remaining claims.

## II. APPOINTMENT OF COUNSEL

In opposing *Defendants' Motion*, plaintiff asks the Court to appoint counsel. Doc. No. 84, p. 3. This Court has previously denied, without prejudice to renewal, plaintiff's requests for the appointment of counsel, explaining that the action had not yet progressed to the point that the Court was able to properly evaluate the merits of plaintiff's claims. *See Order*, Doc. No. 9; *Order*, Doc. No. 17; *Order*, Doc. No. 49; *Order*, Doc. No. 60; *Order*, Doc. No. 80. Moreover, "[a]ppointment of counsel in a civil case is not a constitutional right" but "a privilege that is justified only by exceptional circumstances." *Lavado v. Keohane*, 992 F.2d 601, 605-06 (6th Cir. 1993). Plaintiff has not persuaded the Court that this case presents exceptional circumstances justifying the appointment of counsel. *Id*. at 606 (explaining that determining whether exceptional circumstances exist depend on the type of case, the ability of the

plaintiff to represent himself and the complexity of the factual and legal issues involved). *See also Henry v. City of Detroit Manpower Dep't*, 763 F.2d 757, 760 (6th Cir. 1985)(*en banc*)("[I]n considering an application for appointment of counsel, district courts should consider plaintiff's financial resources, the efforts of plaintiff to obtain counsel, and whether plaintiff's claim appears to have any merit.").

Plaintiff also argues that, should the Court appoint counsel, he would be able to obtain certain information that plaintiff believes supports his claims. Doc. No. 84, pp. 1-3. However, as this Court previously explained, "[i]t does not presently appear that plaintiff requires the assistance of counsel in order to conduct discovery." *Order*, Doc. No. 9, p. 1. Nothing in the record presently before the Court suggests that plaintiff was unable to conduct discovery without the assistance of counsel. Indeed, the record reflects that plaintiff served discovery requests on defendants. *Order*, Doc. No. 63 (granting defendants an extension of time to respond to plaintiff's interrogatories and document requests). Moreover, plaintiff has offered no argument or evidence explaining why, in the more than seven months provided to the parties for the completion of discovery, *Scheduling Order*, Doc. No. 53; *Order*, Doc. No. 70, he was unable to obtain the information that he now argues will "show[] [that] defendants commited [sic] perjury and submitted false evidence to court" on summary judgment. Doc. No. 84, p. 3. For all these reasons, then, plaintiff's most recent request for the appointment of

counsel, Doc. No. 84, is denied.

### III. SUMMARY JUDGMENT STANDARD

Plaintiff and the moving defendants have filed motions for summary judgment. The standard for summary judgment is well established. This standard is found in Rule 56 of the Federal Rules of Civil Procedure, which provides in pertinent part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). In making this determination, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986). However, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *Anderson*, 477 U.S. at 251.

The party moving for summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which demonstrate

the absence of a genuine issue of material fact. *Catrett,* 477 U.S. at 323. Once the moving party has met its initial burden, the burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 250 (quoting former Fed. R. Civ. P. 56(e)); *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1245 (6th Cir. 1995)("nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial"). "Once the burden of production has so shifted, the party opposing summary judgment cannot rest on the pleadings or merely reassert the previous allegations. It is not sufficient to 'simply show that there is some metaphysical doubt as to the material facts.'" *Glover v. Speedway Super Am. LLC*, 284 F. Supp.2d 858, 862 (S.D. Ohio 2003)(citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-moving party must support the assertion that a fact is genuinely disputed. Fed. R. Civ. P. 56(c)(1).

In ruling on a motion for summary judgment "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Glover,* 284 F. Supp.2d at 862 (citing *InteRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989)). Instead, a "court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to

its attention by the parties." *Id. See also* Fed. R. Civ. P. 56(c)(3).

IV. **DISCUSSION**

    A. **Claims for Injunctive Relief**

    As noted *supra*, plaintiff seeks injunctive relief. However, plaintiff was released from custody in January or February 2014. *See* Doc. Nos. 72 and 73. His claims for injunctive relief are therefore now moot. *See*, *e.g.*, *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (finding moot claims for declaratory and injunctive relief where prisoner plaintiff was no longer confined to the institution that allegedly violated his civil rights); *Goar v. Civiletti*, 688 F.2d 27, 29 (6th Cir. 1982) (concluding that claims for injunctive relief were moot where prisoner plaintiff was no longer imprisoned).

    B. **Claims under the Free Exercise Clause**

    The moving defendants argue that they are entitled to qualified immunity on plaintiff's claims against them in their individual capacities under Section 1983 and RLUIPA. *Defendants' Motion*, pp. 7-16. The doctrine of qualified immunity provides that, in civil suits for monetary damages, government officials performing discretionary functions are generally shielded from liability for monetary damages "unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 132 S.Ct. 2088, 2093 (2012) (citing *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080, 179 L. Ed. 2d 1149 (2011)).

    The United States Court of Appeals for the Sixth Circuit applies a two-step inquiry when reviewing claims for qualified immunity: "(1)

whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Hoover v. Walsh*, 682 F.3d 481, 492 (6th Cir. 2012) (quoting *Smoak v. Hall*, 460 F.3d 768, 777 (6th Cir. 2006) (internal quotation marks omitted)).[5] A right is "clearly established" when the "contours of the right are sufficiently clear that a reasonable [government official] would understand that what he is doing violates that right." *Harris v. City of Circleville*, 583 F.3d 356, 366-67 (6th Cir. 2009).

A court may address these steps in any order and either step may be dispositive. *Id. See also Pearson v. Callahan*, 555 U.S. 223, 236 (2009) ("[W]hile the sequence set forth there [in the qualified immunity inquiry] is often appropriate, it should no longer be regarded as mandatory.").

Turning first to his First Amendment claims, plaintiff alleges that defendants Marshall and Grimm violated his rights under the Free Exercise Clause. The First Amendment, which is applicable to the states through the Fourteenth Amendment, provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof. . . ." U.S. Const., Amend. 1. "Prisoners

---

[5] In some cases, the Sixth Circuit uses a third step when analyzing claims for qualified immunity. *Id.* at 492 n.35. This step evaluates "whether the plaintiff has introduced sufficient evidence to support the inference that the official's contested action 'was objectively unreasonable in light of the clearly established constitutional rights.'" *Id.* (quoting *Hills v. Kentucky*, 457 F.3d 583, 587 (6th Cir. 2006)). The Sixth Circuit collapses the second and third prongs in order to avoid duplicative analysis where the case at issue "is one of the many cases where, if the right is clearly established, the conduct at issue would also be objectively unreasonable." *Id.* (citations and internal quotation marks omitted).

retain the First Amendment right to the free exercise of their religion." *Hayes v. Tennessee*, No. 09-5529, 424 Fed. Appx. 546, 549 (6th Cir. June 1, 2011) (citing *Walker v. Mintzes*, 771 F.2d 920, 929 (6th Cir. 1985)). Under § 1983, "[a] prisoner alleging that the actions of prison officials violate his religious beliefs must [first] show that the belief or practice asserted is religious in the person's own scheme of things and is sincerely held." *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (citation and internal quotation marks omitted).

"Only after a prison inmate shows a sincere belief that his or her religion requires the practice at issue does the court move on to determining whether the prison's actions restricting the practice are valid." *Barhite v. Caruso*, No. 09-1312, 377 Fed. Appx. 508, at *510 (6th Cir. May 14, 2010) (citing *Boles v. Neet*, 486 F.3d 1177, 1182 (10th Cir. 2007)). The inmate must show that the regulation or practice substantially burdens the inmate's exercise of religion. *See*, *e.g.*, *Living Water Church of God v. Charter Twp. Meridian*, 258 Fed. Appx. 729, at *733-734 (6th Cir. Dec. 10, 2007) (citing 42 U.S.C. § 2000cc-2(b)), *cert. denied*, 553 U.S. 1093 (2008). However, "[i]t is well-settled that prisoners' rights under the Free Exercise Clause [of the First Amendment] may be subject to reasonable restrictions." *Weinberger v. Grimes*, No. 07-6461, 2009 U.S. App. LEXIS 2693, at *9 (6th Cir. Feb. 10, 2009) (citing *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 352 (1987); *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 491 (6th Cir. 1995)). A prison's action constitutes a substantial

burden on an individual's free exercise of religion when that action forces an individual to choose between "following the precepts of h[is] religion and forfeiting benefits" or when the action in question places "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Marsh v. Granholm*, No. 07-2450, 2008 U.S. App. LEXIS 28078, at *6 (6th Cir. July 31, 2008) (quoting *Living Water*, 258 Fed. Appx. 729, at *734) (internal quotation marks omitted).

Courts accord prison administrators "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Turner v. Safley*, 482 U.S. 78, 89 (1987). Therefore, even if a restriction imposes a substantial burden on an inmate's right to the free exercise of religion, the restriction is "valid if it is reasonably related to legitimate penological interests." *Id*.

Here, it does not appear that the moving defendants challenge plaintiff's invocation of Judaism as his sincerely held belief or that his practice of the Jewish faith requires that plaintiff eat kosher foods. Although the moving defendants argue that plaintiff has failed to allege that "he has been approved to participate in the kosher meal program by ODRC[,]" *Defendants' Motion*, p. 2, they also submit evidence establishing that plaintiff has in fact participated in the kosher meal program. *See Marshall Affidavit*, ¶ 16. Moreover, the moving defendants point to no evidence that reflects a prison

official's challenge to plaintiff's right to participate in the kosher meal program at HCF or otherwise establishes that plaintiff's Jewish faith is not sincerely held. Under these circumstances, the Court accepts that plaintiff's religious belief is sincerely held and that his practice of Judaism requires that plaintiff eat kosher foods. Accordingly, the Court will address plaintiff's claims under the Free Exercise Clause against defendants Marshall and Grimm.

### 1. Defendant Marshall

Plaintiff alleges that defendant Marshall, chaplain at HCF, violated plaintiff's right to practice his Jewish faith by not providing a room in which to pray each week "as other religious groups get[,]" and instead providing a room on only two holidays, *i.e.*, Passover and Chanukah. *Complaint*, PAGEID#: 100-101. *See also Plaintiff's Motion*, p. 4. In support, plaintiff avers that he was not provided a room for special services on several occasions, including Rosh Hashanah, Yom Kippur, Sukkot, Shemini Atzeres, Simchas Torah and for Shabbat services. *Affidavit of Henry L. Stepler*, Doc. No. 65, PAGEID#:479; Doc. No. 77, PAGEID#:699 – PAGEID#:700 ("*Plaintiff's 9/27/13 Affidavit*"). *See also Affidavit of David Carr*, dated December 12, 2012, Doc. No. 65, PAGEID#:512; Doc. No. 77, PAGEID#:682; Doc. No. 86, PAGEID#:775 ("*Carr 12/12/12 Affidavit*").

The moving defendants, however, argue that plaintiff has never been denied the opportunity to practice his religion, offering in support the *Marshall Affidavit*. *Moving Defendants' Memo. Contra*, p.

10.[6]  More specifically, defendant Marshall avers that plaintiff has always been permitted to pray with whomever he chooses in his living space / bunk area and, in fact, has prayed at his bunk area on the Jewish Sabbath.  *Marshall Affidavit*, ¶¶ 7-8.  In addition, plaintiff received religious items at no cost from the Aleph Institute, including reading materials, study guides, a Hannukah menorah and holiday treats.  *Id.* at ¶ 14.  HCF "strive[s] to accommodate weekly congregant services if a faith group's numbers rise to five or more adherents and if there is an outside volunteer available to lead such services."  *Id.* at ¶ 9.  While there have been more than five Christian inmates who choose to congregate each week and who had an outside volunteer available to lead a study group since January 2011, there have never been five or more Jewish inmates at HCF at the same time.  *Id.* at ¶¶ 9, 11.  Moreover, plaintiff "refuses to congregate with the Messianic Jews and non-Orthodox Jews."  *Id.* at ¶ 15.  According to defendant Marshall, HCF is a small institution that has one multipurpose room that also serves as a chapel and one primary classroom that is used for worship and study purposes.  *Id.* at ¶ 10.  Because of the lack of space, "it is impossible to provide a room to

---

[6] Plaintiff complains that the moving defendants served affidavits that "were missing pages[.]"  Doc. No. 77, p. 1 (citing "Docket number 74-74.6" and attaching pages of the purportedly offending affidavits).  The Court accepts as true plaintiff's representation that pages were missing from the affidavits of defendants Marshall, Curry and Grimm and from the affidavits of Kelly Sanders, Angie Ryan and Brian McKinley.  *See* Doc. No. 77-1, PAGEID#:729 - PAGEID#:741.  However, the moving defendants offered these same affidavits in support of their own motion summary judgment, *see* Doc. No. 75-1 - Doc. No. 75-6, to which plaintiff responded.  *See* Doc. Nos. 84, 86 (sur-reply, filed without leave of Court).  Under these circumstances, the Court concludes that plaintiff had the benefit of reviewing full copies of the affidavits.

pray in each week for the numerous different religions that exist at HCF." *Id*. at ¶ 12.  Defendant Marshall further avers that HCF provided plaintiff a room in which to observe the major and minor Jewish festivals that call for such an observance, including, but not limited to, Passover and Hannukah.  *Id*. at ¶ 13.  The moving defendants go on to contend that plaintiff bears the burden of showing that a reasonable method exists by which religious rights can be accommodated without creating *bona fide* security problems. *Defendants' Motion*, p. 12 (citing *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 351 (1987); *Ha'Min v. Montgomery Cty. Sheriff's Dep't*, 440 F. Supp.2d 715, 719 (M.D. Tenn. 2006)).

This Court agrees that defendant Marshall's failure to provide a weekly prayer room did not unconstitutionally infringe plaintiff's free exercise of religion.  Plaintiff complains that a private room was not made available to him and other Jewish inmates on multiple occasions,[7] but the uncontroverted record establishes that HCF had only two rooms available for worship.  *See Marshall Affidavit*, ¶ 10. Stated differently, the limited space makes it impossible to provide to all the numerous religions at HCF a room in which to pray every

---

[7] Plaintiff offers what appears to be a calendar, purportedly documenting "religious holy days and accomodation [sic] put out by the O.D.R.C.  Note, the dates may change but not the allowed holy days."  *Plaintiff's Motion*, PAGEID#:473, PAGEID#:505.  As an initial matter, the calendar submitted by plaintiff is mostly illegible with large black marks through several entries. *See* PAGEID#:505.  Moreover, even if it were completely legible, this calendar is not certified and therefore cannot be considered at the summary judgment stage.  *See*, *e.g.*, *Wiley v. United States*, 20 F.3d 222, 225-26 (6th Cir. 1994) ("Rule 56(e) further requires the party to attach sworn or certified copies of all documents referred to in the affidavit. Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.").

week.  *Id.* at ¶ 12.  Although HCF attempts to accommodate a faith's group with five or more adherents and an outside volunteer service leader, there have never been five or more Jewish inmates at HCF at the same time; plaintiff apparently concedes that there is no outside rabbi volunteer to lead a service.  *Id.* at ¶¶ 9, 11-12; *Affidavit of Henry Stepler*, attached to *Plaintiff's Motion*, PAGEID#:511 ("*Plaintiff's 9/10/12 Affidavit*").  In addition, plaintiff "refuses to congregate with the Messianic Jews and non-Orthodox Jews." *Marshall Affidavit*, ¶ 15.  Nevertheless, HCF has provided plaintiff a room in which to observe major and minor Jewish festivals that call for such an observance.  *Id.* at ¶ 13.  Additionally, HCF permitted plaintiff, who received religious items at no cost from the Aleph Institute, to pray in his bunk space on the Jewish Sabbath.  *Id.* at ¶¶ 7-8, 14; *Plaintiff's 9/27/13 Affidavit*, p. 2.  Indeed, plaintiff has prayed in this area.  *Marshall Affidavit*, ¶ 8.  Moreover, plaintiff has not shown that there were "ready alternatives" available that accommodate his right to freely practice his religion that have a *de minimis* impact on defendants' valid penological interests.  *O'Lone*, 482 U.S. at 350; *Ha'Min*, 440 F. Supp.2d at 719-20.  Where HCF permitted plaintiff to practice his religion at his bunk space and provided a separate room on certain occasions, the Court cannot say that HCF's failure to provide a private prayer room to plaintiff on a weekly basis substantially burdens, and therefore violates, plaintiff's rights under the Free Exercise Clause.  *See*, *e.g.*, *Thompson v. Kentucky*, 712 F.2d 1078, 1082 (6th Cir. 1983) (stating that where

there are reasonable opportunities provided to exercise religious freedom, "[a] special chapel or place of worship need not be provided for every faith regardless of size; nor must a chaplain, priest, or minister be provided without regard to the extent of the demand.").

### 2. Defendant Grimm

Plaintiff alleges that defendant Grimm violated plaintiff's right to practice his Jewish faith by failing to provide kosher meals containing sufficient daily calories. *Complaint*, PAGEID#: 100. In moving for summary judgment, plaintiff takes the position that he has "repeated[ly]" been given "non sealed non kosher food in violations [sic] of his religious practices." *Plaintiff's Motion*, p. 2. *See also Plaintiff's 9/10/12 Affidavit*, PAGEID#:510 ("My religious diet of kosher is being violated; repeatedly."). The moving defendants disagree, contending that there was no First Amendment violation because HCF served plaintiff pre-sealed meals with sufficient calories that were not cross-contaminated by non-kosher foods. *Defendants' Motion*, pp. 12-15. *See also* Doc. No. 74, pp. 12-15. In support, the moving defendants offer the affidavits of defendants Curry and Grimm. *See Affidavit of Lucas Curry*, Doc. Nos. 74-2 and 75-2 ("*Curry Affidavit*"), and *Affidavit of Tracy Grimm*, Doc. Nos. 74-3 and 75-3 ("*Grimm Affidavit*").

### a. Kosher food

Turning first to the issue of whether plaintiff was served kosher food, the moving defendants' arguments are well-taken. Defendant Grimm worked as HCF's Food Service Manager II from 1992 until

September 7, 2013. *Grimm Affidavit*, ¶ 4.[8]  In this capacity, defendant Grimm, *inter alia*, oversaw the kitchen and ordered food and supplies. *Id*. at ¶ 5.  According to defendant Grimm, a kosher kitchen is cost prohibitive. *Id*. at ¶ 13.  Although she met plaintiff when he was an inmate at HCF, she did not select the food served to him. *Id*. at ¶¶ 6, 11.  Instead, officials at the Ohio Department of Rehabilitation and Correction select the food served to inmates who keep kosher. *Id*. at ¶ 11; *Affidavit of Kelly M. Sanders*, ¶¶ 5-6, Doc. Nos. 74-4, 75-4 ("*Sanders Affidavit*"), and Doc. No. 75-4, PAGEID#:641 ("Kosher Menu").

Plaintiff was served pre-packaged kosher meals. *Grimm Affidavit*, ¶¶ 8, 14-15, 19; *Curry Affidavit*, ¶ 10.  The kosher food, which was kept in locked storage on a separate shelf away from non-kosher food, was not cross-contaminated with non-kosher food. *Grimm Affidavit*, ¶¶ 16, 18, 20; *Curry Affidavit*, ¶¶ 10-11.  In addition, beginning in approximately March 2013, HCF permitted plaintiff to prepare sack meals on holidays (which required such meals) in a special prep area in the kitchen. *Marshall Affidavit*, ¶ 18; *Curry Affidavit*, ¶ 10.  Moreover, when serving additional food items, HCF permitted inmates who kept kosher, like plaintiff, to have the first serving out of a can or package. *Grimm Affidavit*, ¶ 20; *Curry Affidavit*, ¶ 11.  Finally, HCF provided plaintiff with a locked kosher microwave in which to cook his kosher meals. *Grimm Affidavit*, ¶ 18; *Curry Affidavit*, ¶ 11.

In response, plaintiff argues, *inter alia*, that the moving

---

[8] ODRC now employs defendant Grimm as a lieutenant. *Id*. at ¶ 4.

defendants' various affidavits and the Kosher Menu "can NOT BE TRUE"
and amount to "PERJURY" and "PERJURED TESTIMONY" [sic]. Doc. No. 77,
p. 1; Doc. No. 84, p. 2 (emphasis in original); Doc. No. 86, pp. 1-2
(emphasis in original). More specifically, plaintiff insists that HCF
did not give him sealed kosher meals and that he "never got the food
in the menue [sic] presented by defendants." Doc. No. 84, pp. 1-2.
However, these conclusory assertions are not made under oath and the
Court may not consider unsworn, inadmissible statements at the summary
judgment stage. Fed. R. Civ. P. 56(c). *See also Harris v. J.B.
Robinson Jewelers*, 627 F.3d 235, 239 n.1 (6th Cir. 2010) ("'[A] court
may not consider unsworn statements when ruling on a motion for
summary judgment.'") (quoting *Dole v. Elliott Travel & Tours, Inc.*,
942 F.2d 962, 968-69 (6th Cir. 1991)). Plaintiff also submits a menu
that purports to represent the food that HCF provided to plaintiff.
*See* Doc. No. 77, PAGEID#:674; Doc. No. 86, PAGEID#:767. However,
documents offered in support of (or against) summary judgment must be
admissible, *i.e.*, authenticated by affidavit. Fed. R. Civ. P.
56(c)(2). *See also David A. Flynn, Inc. v. GMAC*, No. 08-3815, 345
Fed. Appx. 974, at *978-79 (6th Cir. Sept. 24, 2009)
("[U]nauthenticated documents do not meet the requirements of Rule
56(e)."); *Fox v. Mich. State Police Dep't*, No. 04-2078, 173 Fed. Appx.
372, at *375 (6th Cir. 2006) (affirming decision to disregard
documents that "were neither sworn nor certified, were not properly
authenticated and were therefore inadmissible in evidence"). Here,
plaintiff's menu is not authenticated and therefore must be

17

disregarded on summary judgment.[9]

Plaintiff also offers the affidavits of other allegedly Jewish inmates incarcerated at some point at HCF. *See Affidavit of Michael Paul Baker*, Doc. No. 65, PAGEID#:506; Doc. No. 77-1, PAGEID#:698; Doc. No. 86, PAGEID#:791 ("*Baker Affidavit*"); *Affidavit of David Carr*, dated June 28, 2012, Doc. No. 65, PAGEID#:507- PAGEID#:508; Doc. No. 77, PAGEID#:683 - PAGEID#:684; Doc. No. 86, PAGEID#:776 - PAGEID#:777 ("*Carr 6/28/12 Affidavit*"). The *Baker Affidavit*, however, does nothing to establish that HCF served plaintiff non-kosher food. Mr. Bakers avers that "[t]he Kosher meal program is horrible here. . . . Several of us do not participate in the program because there is no way to know that the food is Kosher or how it has been stored ect [sic]." *Baker Affidavit*. Stated differently, Mr. Baker simply does not know whether certain food is kosher. In this regard, the *Grimm Affidavit* and *Curry Affidavit*, which aver that inmates keeping kosher received pre-sealed kosher meals that were not cross-contaminated, are uncontroverted.

Plaintiff's reliance on the *Carr Affidavit* is similarly unavailing. Mr. Carr worked in the kitchen shortly after arriving at HCF on June 27, 2011. *Carr 6/28/12 Affidavit*, p. 1. On the one hand, Mr. Carr avers that "[t]he Kosher meals were not balanced or Kosher because they took the food from non-Kosher pans. I would watch them

---

[9] Moreover, even if the Court considered plaintiff's proffered menu, it is undated, making it impossible to know when this purported menu was allegedly in effect. Conversely, the moving defendants' Kosher Menu represents food served as of September 13, 2013. *Sanders Affidavit*, ¶¶ 5-6; Kosher Menu, attached thereto.

prepare the meals while working in the kitchen." *Id.* On the other
hand, however, Mr. Carr avers that he prepared and consumed kosher
meals at HCF with no complaints. *Id.* ("While working and being on
Kosher meals, I was constantly being harassed for eating food which I
was legal to eat as an employee in the kitchen"; "I only ate what
would be considered Kosher or coming from the same place the Kosher
meals came from" and "We had to cook our own Kosher meals"; "While on
Passover I was given prepared Kosher meals which I was allowed to
microwave and other things related to the Passover. I have no
complaint as to what I received during this time"). In other words,
the *Carr 6/28/12 Affidavit* offers conflicting evidence on whether or
not HCF served kosher meals cross-contaminated by non-kosher food.
Even assuming that there may have been some occasions on unidentified
dates where kosher food was contaminated, such isolated or sporadic
incidents do not rise to the level of constitutional violations. *See*,
*e.g.*, *Colvin v. Caruso*, 605 F.3d 282, 293 (6th Cir. 2010) (affirming,
*inter alia*, summary judgment against certain defendants where the
plaintiff "has asserted only isolated incidents of [defendants]
DeShambo and Anderson serving him nonkosher food"); *Johnson v.
Wilkinson*, No. 98-3866, 2000 U.S. App. LEXIS 21036, at *6-7 (6th Cir.
Aug. 11, 2000) (finding that the offending "isolated instances" did
not violate the plaintiff's constitutional rights). For all these
reasons, plaintiff's allegations that his rights under the Free
Exercise Clause were violated because defendant Grimm served non-
kosher food are not well-taken.

### b.   Sufficient calories

The Court next considers whether the kosher meals provided

sufficient calories to plaintiff.  *See Complaint*, PAGEID#: 100.  As an

initial matter, the parties dispute whether or not the sealed kosher

meals were supplemented by fresh fruit and/or side dishes.  In moving

for summary judgment, plaintiff avers that "[t]here has been problems

in the past with providing enoff [sic] calories to kosher meals[.]"

*Declaration of Henry L. Stepler*, Doc. No. 65, PAGEID#:474, ¶ 4

("*Plaintiff's 11/15/13 Declaration*").  To that end, plaintiff avers

that, as of November 15, 2013, "there has been no fresh fruit nor side

dishies [sic] with every meal."  *Id*. at ¶ 5.  *See also id*. at ¶ 7.

The moving defendants, however, present evidence that HCF did

provide fresh fruit and side dishes with the sealed kosher meals.

More specifically, defendant Grimm avers that plaintiff was provided

with "additional food items such as fruit, bread, vegetables and

salad.  All of the kosher meals with the supplemental food provided to

Stepler were nutritionally adequate."  *Grimm Affidavit*, ¶ 8.  *See also

id*. at ¶ 20 (stating that plaintiff was given the first serving of the

additional food items that were provided with his pre-packaged kosher

meals); *Marshall Affidavit*, ¶ 16 ("Mr. Stepler receives pre-packed and

sealed kosher meals.  He is provided with extra food to supplement

those meals such as fruit, canned vegetables, etc."); *Curry Affidavit*,

¶ 11 ("For example, if a bag of vegetables or a jar of salad dressing

was opened, that food would first be prepared for the kosher-keeping

inmates in order to avoid cross contamination.").  In addition,

plaintiff "was allowed to bag his own meals in the kitchen from about
March 2013 through November 2013. He figured out his own calories and
got more in two bags than most inmates." *Grimm Affidavit*, ¶ 12.
Moreover, after Aramark assumed food service at HCF in March or April
2013, it supplied the food, supervised the inmates, kept track of food
usage, waste, and recorded temperatures in the HCF kitchen. *Curry
Affidavit*, ¶¶ 4, 6. For example, HCF's kosher menu as of September
13, 2013, was nutritionally adequate. *Sanders Affidavit*, ¶ 5; Doc.
No. 75-4, PAGEID#:641 (Kosher Menu containing "Dietician's Signature
of Nutritional Adequacy"). According to this Kosher Menu, each kosher
meal includes an entrée and additional food such as fresh fruit,
bread, and garden salad. Doc. No. 75-4, PAGEID#:641 ("This menu meets
the nutritional guidelines of the American Correctional Association
which are based upon the current DRI's for males and females 19 to 50
years as established by the Food and Nutrition Board of the Institute
of Medicine, National Academy of Sciences.").

As discussed *supra*, summary judgment is appropriate if there is
"no genuine dispute as to any material fact[.]" Fed. R. Civ. P.
56(a). "When opposing parties tell two different stories, one of
which is blatantly contradicted by the record, so that no reasonable
jury could believe it, a court should not adopt that version of the
facts for purposes of ruling on a motion for summary judgment." *Scott
v. Harris*, 550 U.S. 372, 380 (2007). Here, other evidence in the
record contradicts plaintiff's assertion that the kosher meals were
not nutritionally adequate and that he was not provided fresh fruit or

side dishes at every meal. *See Grimm Affidavit*, ¶¶ 8, 12; *Curry Affidavit*, ¶ 11; *Marshall Affidavit*, ¶ 16; *Sanders Affidavit*, ¶ 5; Doc. No. 75-4, PAGEID#:641. Moreover, the record reflects that plaintiff wanted pre-sealed kosher meals that equaled 2500 calories per day, *Grimm Affidavit*, ¶ 7, and plaintiff admits that he threw away additional food that was not pre-packaged. *Plaintiff's Motion*, PAGEID#:525 - PAGEID#:526 (letter dated July 12, 2012 from plaintiff addressed to ODRC "Religious Director").[10] Further, plaintiff chose not to eat breakfast because he did not want to get up early. *Grimm Affidavit*, ¶ 9. It appears that plaintiff therefore wanted his entire day's calories served to him in two meals. *Id*. Where all of this evidence blatantly contradicts *Plaintiff's 11/15/13 Declaration*, ¶ 4, so that no reasonable jury could believe it, the Court will disregard plaintiff's averment that he did not receive fresh fruit and other food items to supplement his pre-sealed kosher meals. *See Scott*, 550 U.S. at 380. The Court, then, is left with a record establishing that plaintiff was served kosher meals that were nutritionally adequate.

Finally, the Prison Litigation Reform Act ("PLRA") precludes an award of monetary damages on First Amendment claims where an inmate does not suffer a physical injury. *See*, *e.g.*, *Yaacov v. Collins*, No. 09-4148, 2010 U.S. App. LEXIS 27719, *10 (6th Cir. Dec. 1, 2010) (stating that the PLRA provision requiring that a prisoner suffer a

---

[10] Although this letter has not been verified by plaintiff, the moving defendants also rely on it in connection with their motion for summary judgment. *See Defendants' Motion*, p. 14; Doc. No. 74, p. 14. Under these circumstances, the Court concludes that no "gross miscarriage of justice" will result from its consideration of this letter on summary judgment. *See Johnson v. U.S. Postal Serv.*, 64 F.3d 233, 237 (6th Cir. 1995).

physical injury in order to recover monetary damages "applies to all federal civil actions — even those alleging violations of the First Amendment or other constitutional provisions"). For all of these reasons, to the extent that plaintiff alleges that his rights under the Free Exercise Clause were violated because defendant Grimm failed to provide kosher food containing sufficient calories, *Plaintiff's Motion* is not well-taken.

### B. RLUIPA

Plaintiff and the moving defendants also seek summary judgment on plaintiff's claims under RLUIPA. RLUIPA prohibits the governmental imposition of a "substantial burden on the religious exercise" of an inmate unless the government establishes that the burden furthers a "compelling governmental interest" through the "least restrictive means[.]" 42 U.S.C. § 2000cc-1(a). *See also Cutter v. Wilkinson*, 544 U.S. 709 (2005) (upholding constitutionality of RLUIPA). "RLUIPA thus protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Cutter*, 544 U.S. at 721.

"The threshold inquiry under RLUIPA is whether the challenged governmental action substantially burdens the exercise of religion." *Baranowski v. Hart*, 486 F.3d 112, 124 (5th Cir. 2007). *See also Barhite v. Caruso*, No. 09-1312, 377 Fed. Appx. 508, at *511 (6th Cir. May 14, 2010) ("RLUIPA [ ] requires an inmate to show that his or her religious exercise [is] substantially burdened."). A "substantial

burden" "force[s] an individual to choose between 'following the precepts of [his] religion and forfeiting benefits' or when the action in question placed 'substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Hayes v. Tennessee*, No. 09-5529, 424 Fed. Appx. 546, at *555 (6th Cir. June 1, 2011) (quoting *Barhite*, 377 F. Appx. at 511).

### 1. Defendant Marshall

Plaintiff contends that defendant Marshall violated his rights under RLUIPA by failing to provide a weekly prayer room. *Complaint*, PAGEID#: 100-101. *See also Plaintiff's Motion*, p. 4. As discussed *supra*, the uncontroverted record establishes that HCF had only two rooms available for worship, making it impossible to provide to every one of the numerous religions at HCF a room in which to pray every week. *Marshall Affidavit*, ¶¶ 10, 12. Although HCF could not provide a room to plaintiff on a weekly basis because there have never been five or more Jewish inmates at HCF at one time, *id*. at ¶¶ 9, 11-12, plaintiff was provided with a room in which to observe certain Jewish festivals that call for such an observance. *Id*. at ¶ 13. Additionally, HCF permitted plaintiff, who received religious items at no cost from the Aleph Institute, to pray in his bunk space on the Jewish Sabbath. *Id*. at ¶¶ 7-8, 14; *Plaintiff's 9/27/13 Affidavit*, p. 2. Indeed, plaintiff continued to follow his faith by praying in his bunk space on the Jewish Sabbath. *See Marshall Affidavit*, ¶ 8. Based on this record, there is no evidence that defendant Marshall's failure to provide plaintiff a prayer room on a weekly basis

substantially burdened plaintiff's rights under RLUIPA.

### 2. Defendant Grimm

As set forth above, this Court has already concluded that plaintiff was offered nutritious pre-sealed kosher meals and additional food items that were not cross-contaminated by non-kosher foods. *See, e.g.*, *Grimm Affidavit*, ¶¶ 8, 20; *Marshall Affidavit*, ¶ 16; *Curry Affidavit*, ¶ 11; *Sanders Affidavit*, ¶¶ 5-6; Kosher Menu, Doc. No. 75-4, PAGEID#:641. Moreover, the record reflects that any deficiency in calories resulted from plaintiff's choice not to avail himself of breakfast, *Grimm Affidavit*, ¶ 9, or from plaintiff's discard of additional food items that were not pre-packaged, *Plaintiff's Motion*, PAGEID#:525 - PAGEID#:526. Under these circumstances, defendant Grimm did not substantially burden plaintiff's rights under RLUIPA by failing to provide kosher meals containing sufficient calories.

### C. Equal Protection

Plaintiff complains that defendants Marshall and Curry violated his rights under the Equal Protection Clause of the Fourteenth Amendment. *See Complaint*, PAGEID#:100 - PAGEID#:101; *Plaintiff's Motion*, PAGEID:470 - PAGEID#:472. *See also Order and Report and Recommendation*, p. 5 (construing allegations to include claims under the Equal Protection Clause). The Equal Protection Clause applies to the states and requires "that all persons similarly situated should be treated alike." *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); U.S. Const. amend. XIV. To state an equal protection claim in

the prison context, a plaintiff must allege that he was treated differently than other similarly situated prisoners. *See McCleskey v. Kemp, Supt. Ga. Diagnostic and Class. Ctr.*, 481 U.S. 279, 292-93 (1987). However, a plaintiff does not establish "a violation of his equal protection rights simply by showing that other inmates were treated differently. He must show that he 'was victimized because of some suspect classification, which is an essential element of an equal protection claim.'" *Newell v. Brown*, 981 F.2d 880, 887 (6th Cir. 1992) (quoting *Booher v. United States Postal Serv.*, 843 F.2d 943, 944 (6th Cir. 1988)). Suspect classes include those based on race, religion and national origin. *Wilson v. Yaklich*, 148 F.3d 596, 604 (6th Cir. 1998).

### 1. Defendant Marshall

Plaintiff contends that defendant Marshall violated his rights under the Equal Protection Clause by refusing to provide a weekly prayer room to plaintiff and other Jewish inmates, when inmates of other religions were provided a room on a weekly basis. *Complaint*, PAGEID#:100 - PAGEID#:101; *Plaintiff's Motion*, PAGEID:470 – PAGEID#:472; *Stepler 9/10/12 Affidavit*; *Carr 12/12/12 Affidavit*. As noted, however, HCF had only two rooms for worship, making it impossible to provide to every one of the numerous religions at HCF a room in which to pray every week. *Marshall Affidavit*, ¶¶ 10, 12. Therefore, according to defendant Marshall, HCF "strive[s] to accommodate weekly congregant services if a faith group's numbers rise to five or more adherents and if there is an outside volunteer

available to lead such services." *Id*. at ¶ 9. For example, while there have been more than five Christian inmates who choose to congregate each week and who had an outside volunteer available to lead a study group since January 2011, there have never been five or more Jewish inmates at HCF at the same time. *Id*. at ¶¶ 9, 11. Further, plaintiff "refuses to congregate with the Messianic Jews and non-Orthodox Jews," *id*. at ¶ 15, and he concedes that there is no outside rabbi to lead weekly services. *Plaintiff's 9/10/12 Affidavit*, at PAGEID#:511. Under these circumstances, the Court cannot conclude that plaintiff, who belonged to a faith with fewer than five adherents and who had no outside volunteer to lead weekly services, was similarly situated to other inmates of different faiths who received a weekly prayer room.

Although adherents of minority religions must be afforded "a reasonable opportunity of pursuing [their] faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts," *Looker v. Ohio*, 1998 U.S. App. LEXIS 28428, at *5-6 (6th Cir. Nov. 9, 1998) (quoting *Cruz v. Beto*, 405 U.S. 319, 322 (1972)), HCF need not provide identical accommodations to such inmates. *Id*. (citations omitted). Rather, prisons must make a "good faith accommodation of the [prisoner's] rights in light of practical considerations." *Id*. (quoting *Allen v. Toombs*, 827 F.2d 563, 569 (9th Cir. 1987)).

Here, defendant Marshall made a good faith accommodation of plaintiff's rights in light of the limited space available at HCF.

Plaintiff was provided a room in which to observe cetain Jewish festivals that call for such an observance. *Marshall Affidavit*, ¶ 13. Additionally, HCF permitted plaintiff, who received religious items at no cost from the Aleph Institute, to pray in his bunk space on the Jewish Sabbath. *Id*. at ¶¶ 7-8, 14; *Plaintiff's 9/27/13 Affidavit*. Indeed, plaintiff has taken advantage of this opportunity. *Marshall Affidavit*, ¶ 8. Accordingly, there is no evidence that defendant Marshall violated plaintiff's rights under the Equal Protection Clause.

### 2. Defendant Curry

Plaintiff next alleges that defendant Curry violated plaintiff's right to practice his Jewish faith by issuing conduct reports to Jewish inmates, but not to non-Jewish inmates. *Complaint*, PAGEID#: 100. The moving defendants disagree, arguing that defendant Curry is entitled to summary judgment on this claim. *Defendants' Motion*, pp. 17-18. Based on the following uncontroverted record, defendants' arguments are well-taken. Defendant Curry began working in food service at HCF in 1997. *Curry Affidavit*, ¶ 4. After working as a HCF corrections officer for six or seven years, he returned to food service in 2006 or 2007. *Id*. There, he worked as food service coordinator until approximately March or April 2013. *Id*.[11] Defendant Curry's duties as food service coordinator included maintaining safety, sanitation, meal production and supervision of inmates who cooked meals, and issuing conduct reports "for rule violations and

[11] Defendant Curry currently works as a corrections officer at HCF. *Id*.

situations that arose in the kitchen." *Id*. at ¶ 5. Defendant Curry
denies that he issued conduct reports only to Jewish inmates, but
avers that he issued conduct reports to those inmates who violated HCF
rules, regardless of the inmates' religious affiliation. *Id*. at 8.
Indeed, defendant Curry did not know the religious affiliation of the
inmates to whom he issued reports. *Id*. (citing list of inmates to
whom he issued reports, attached thereto at Doc. No. 75-2, PAGEID#:634
- PAGEID#:635). *See also Affidavit of Angie Ryan*, Doc. No. 75-5
("*Ryan Affidavit*") (authenticating list of inmates to whom defendant
Curry issued reports); *Affidavit of Chaplain Brian McKinley*, Doc. No.
75-6, ¶ 3 ("*McKinley Affidavit*") (attaching list of religious
affiliations of inmates to whom defendant Curry issued conduct
reports). On June 24, 2013, defendant Curry issued a conduct report
to plaintiff because he tried to steal food, not because of
plaintiff's religious affiliation. *Id*. at ¶ 7. In short, the
uncontroverted evidence establishes that defendant Curry did not know
inmates' religious affiliations and did not issue conduct reports to
plaintiff or other inmates based on those affiliations. Based on this
record, the moving defendants' request for summary judgment on
plaintiff's Equal Protection claims against defendant Curry is well-
taken.

**WHEREUPON**, plaintiff's request for the appointment of counsel,
Doc. No. 84, p. 3, is **DENIED**. It is **RECOMMENDED** that *Plaintiff [sic]
Motion for Summary Judgment*, Doc. No. 65, be **DENIED** and that
*Defendants Lucas Curry, Victor Marshall, and Tracy Grimm's Motion for*

*Summary Judgment*, Doc. No. 75, be **GRANTED**.

   If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b).

   The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Detroit Fed'n of Teachers, Local 231 etc.*, 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


July 10, 2014                          *s/Norah McCann King*
                              Norah M<sup>c</sup>Cann King
                         United States Magistrate Judge